## THE P. I. NEVIUS.

## THE WIDE AWAKE.

### DAY v. ALBERTSON et al.

(Circuit Court of Appeals, Second Circuit. January 9, 1895.)

COLLISION—DRIFTING TOW WITH ANCHORED SCHOONER—INSECURE FASTENINGS —LIABILITY OF TUG.

Where three loaded scows broke loose from their fastenings, and were driven before a gale into collision with an anchored vessel, and damaged her, *held*, that the tug having the scows in charge was solely liable, because she had so disposed the tow that the headlines of one of the scows was required to bear the strain of all three of them, and of the tug herself, without any adequate additional fastenings.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by William Albertson and others, owners of the schooner Ella Snedeker, against the steam tug P. I. Nevius (Winfield S. Day, claimant) and the schooner Wide Awake (Thomas Maddock and others, claimants), to recover damages for a collision. The circuit court held the tug solely liable, and accordingly entered a decree against her, and dismissing the libel as against the Wide Awake. The claimant of the tug appealed.

On October 22, 1891, the tug P. I. Nevius was bound on a voyage from New York City to Haverstraw, on the Hudson river, with three scows loaded with garbage. In the afternoon the tow arrived at Hastings, where the tug put in for water, and to wait for the flood tide. There were at the time two vessels made fast to the bulkhead or river front of the dock. These were the schooner Wide Awake and the scow Jessie Clark. The Wide Awake was lying with her starboard side to the dock, headed up stream; and the Jessie Clark was made fast just ahead of her, and close to her bows.

The scows composing the tow of the Nevius were named, respectively, the Cleary, Oneida, and Lizzie D. In making fast her tow, the tug placed the Cleary outside of the Jessie Clark, and the Oneida outside of the Wide Awake, while the Lizzie D. was tailed on, and made fast to the Oneida. In the evening the libelants' schooner, Ella Snedeker, came to anchor about half a mile further down the river. In the afternoon the wind had begun to rise, and towards evening there were indications of a hard blow. The master of the Jessie Clark therefore requested the master of the Nevius to remove the scow Cleary from alongside his vessel. This was done by dropping the Cleary back, and making her fast to the outside of the scow Oneida. The tug then went astern and made fast to the scow Lizzie D. Thus the Cleary, the Lizzie D., and the tug were all held by the lines of the Oneida, except that the Lizzie D. had breast and stern lines,—one to the Wide Awake, and one to the dock. The Oneida had a headline to the dock, and two lines to the Wide Awake. Not long after the tow had been thus arranged, the line from the Oneida to the dock parted, or, as was claimed in behalf of the tug, was cut by the captain of the Wide Awake, thus throwing the whole strain upon the two lines running to the Wide Awake. These either parted, or were cut in succession, and the tow drifted rapidly down the river until it brought up across the bows of the schooner Ella Snedeker, and caused the damages which the suit was brought to recover.

In the district court the following opinion was delivered by BROWN, District Judge, May 13, 1892:

"The evidence, I think, leaves no reasonable doubt that the canal boats broke loose from alongside the Wide Awake at Hastings from the lack of sufficient lines from the Oneida to the Wide Awake and to the bulkhead alongside of which she lay, after the Cleary had been moved from her previous position to a place alongside and outside of the Oneida. No lines were run from the Cleary to the bulkhead; and no additional line was run from the Oneida to the Wide Awake or to the bulkhead after the Cleary was thus brought and made fast to the Oneida. I have no doubt that it was the additional weight of the Cleary and the tug upon the headline of the Oneida in the rising wind and sea, that caused them to break loose by the parting of the headline of the Oneida within a few minutes after the Cleary came alongside. The removal of the Cleary to a place alongside of the Oneida was the act of the tug. The tug had the care of all the boats, and was responsible for imposing this additional and unreasonable strain on the Oneida's headline without any sufficient additional fastenings. Upon this ground I must hold the tug in fault for the subsequent collision with the Snedeker, against which the boats, after breaking loose, drifted by the force of the northeasterly gale. It is not necessary to consider the further question whether the tug was not also in fault for not maintaining a proper lookout and taking proper care to avoid the libelant's schooner Snedeker which was at anchor in a proper place and ought to have been seen.

"The schooner Wide Awake also is sought to be held liable on the ground that the headline of the Oneida to the bulkhead did not part, but was wrongfully cut by the captain of the Wide Awake, as well as a line made fast to the Wide Awake. Her captain testifies very positively that the line to the bulkhead was not cut by him nor by any one on the schooner, and that it parted. Others say it was chafed. He says that the forward line to his boat was cut by him, but in compliance with the urgent orders of some one on the Oneida to cast it off; this being after the bow of the Oneida had already swung loose from the dock by the parting of the headline. The witnesses for the Nevius testify that no such order was given from the Oneida. The captain of the tug gave orders that the line to the tug should be cast off from the Lizzie D. close by; and it is possible that it was the latter order that the captain of the Wide Awake understood as designed for him. The claim that the Oneida's headline to the dock was cut by some one on the Wide Awake is not, I think, sustained by sufficient evidence, in the face of the opposing testimony, and of the improbability that an act so outrageous would be committed without previous expostulation or notice.

After that line parted, the others were insufficient; and the mistake in cutting them, if it was a mistake, and not ordered, was an excusable one, and was, I think, a harmless and probably a fortunate one.

"Decree for the libelant against the tug with costs; and for the dismissal of the libel as against the Wide Awake, with costs."

Benedict & Benedict, for the P. I. Nevius.
Goodrich, Deady & Goodrich, for the Wide Awake.
Stewart & Macklin, for W. S. Day.
Alexander & Ash, for respondents.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. This appeal involves questions of fact only. The testimony in the record is extremely conflicting, and inasmuch as the witnesses were examined in the presence of the district judge, and the value of their testimony depends wholly upon their credibility, and there is no decided preponderance upon either side, we should not be justified in disturbing his conclusions. After a careful examination of the testimony, we are satisfied that the dock line of the Oneida was not cut by the master of the Wide Awake, but parted because it was unable to resist the extraordinary tension of the Oneida and the other boats of the tow, to which it ought not to have been exposed. After this line parted one of the two lines by which the Oneida was made fast to the Wide Awake also parted; and it was then, in a time of great excitement, and when there was danger that the Wide Awake herself would be injured unless she was detached from the Oneida, that the captain of the Wide Awake cut the remaining line. We are not entirely satisfied that he did this pursuant to any supposed request from the master of the tug or of the Oneida; but, however this may be, it was not a wanton or a negligent act upon his part, but one which he believed, and had a right to believe was necessary for the safety of his own vessel. The master of the tug was responsible for the whole situation. The decree of the court below properly exonerated the Wide Awake, and adjudged the tug solely in fault for the injuries to the libelants' schooner. Accordingly, it is affirmed, with interest and costs.